No. 67.—SAMUEL HARRISON, administrator, &c. and another, plaintiffs in error, vs. EDWARD B. YOUNG and another, defendants in error.

[1.] On an appeal to the Superior Court as to the amount of damages assessed by appraisers appointed by the Inferior Court, under a special Statute, the party originally moving in the case below, is entitled to open and conclude.

[2.] Proof of seven years' regular and uninterrupted usage of a public ferry in this State, is *prima facie* evidence of a prescriptive right.

[3.] A grantee, in this country, takes nothing by implication, but is confined to the terms of his charter.

[4.] The value of land taken for public use, is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated.

[5.] Grants to lands on water-courses from the State, *with the appurtenances,* convey no right of *public ferry.* The right of *private ferry* passes with the fee; and for any interference with this, the owner is entitled to compensation.

[6.] An appeal to a Special Jury, under the Act of 1837, incorporating the Irwinton Bridge Company, carries nothing but the question of damages.

[7.] Where testimony is suffered to go to the Jury without objection, and no effort is made to withdraw it from their consideration, it is too late, after the argument has closed, to call upon the Court to charge the Jury that it was illegally admitted.

Appeal from an award, in Randolph Superior Court. Tried before Judge WARREN, October Term, 1850.

By an Act of the General Assembly, passed in 1837, incorporating the Irwinton Bridge Company, for the purpose of erecting a bridge across the Chattahoochee River, it was provided, that the board of directors might take such parcel or parcels of land as they might deem necessary for the abutments, &c. of their bridge; "and in case of disagreement between the owner or owners of said land and the board of directors, in regard to the damages or price of such land, it may and shall be lawful for the board of directors to appoint one disinterested freeholder, and the owner or owners to appoint another disinterested free-

holder, as appraisers, and the Justices of the Inferior Court of Randolph County shall appoint another disinterested freeholder, * * * * all of whom shall be sworn, by an officer authorized to administer an oath, to make and return to said Court, a just and impartial valuation of the damages or value of the land thus required by the said corporation, and their award shall be in writing, and signed by at least a majority of the said appraisers, which shall be held and taken as a judgment for the amount against the said corporation, and shall be enforced by an execution from the said Inferior Court; and the plat of said land, with the award, shall be recorded in the said County of Randolph, in the same manner that deeds are * * * *Provided*, if either party shall think proper, he, she or they may appeal to the Superior Court of said County, and have the damages ascertained by the verdict of a Special Jury, and their decision shall be final."

Edward B. Young, and John McNab, Intendant, the assignees of the corporation, having disagreed with the plaintiffs in error as to the valuation of the land on which the eastern abutment of the bridge was situated, each party and the Inferior Court appointed an appraiser—two of whom subsequently made an award—the third dissenting. From this award the plaintiffs in error appealed; which appeal came on to be tried at the October Term of the Superior Court of said County, 1850.

When both parties had announced themselves ready for trial, Counsel for plaintiffs in error insisted that they, as plaintiffs and appellants, were entitled to open and conclude the case, and moved the Court that they should be allowed to proceed with their evidence. The Court overruled the motion, and this is the first ground of error assigned.

Counsel for plaintiffs in error then moved, as a preliminary motion, that the whole proceeding should be quashed, on the ground, that the alleged award was not the award of the three appraisers, but of only two of them—the other expressly dissenting. The Court overruled the motion, and this decision is assigned as a ground of error.

The counsel for defendants in error then read in evidence to

the Jury, a paper purporting to be the affidavit taken by the appraisers, their award, the plat of land taken for the abutment of the bridge, and the certificate of the Clerk that an appeal had been entered.

Counsel for the Harrisons then proposed to prove, " That from the 1st of January, 1832, to the 1st of January, 1840, when the bridge was completed, there was in continuous use and occupation, a ferry across the Chattahoochee river, opposite Irwinton, near the site of said bridge; that from the 1st of January, 1832, to the 1st January, 1835, this use and occupation were in one Parker, who held under one McKenzie; that from 1st January, 1835, to 1st January, 1840, the use and occupation were in Love and Iverson, who received said ferry from said Parker, and who also held under a lease from said McKenzie; that on the 14th June, 1835, said McKenzie transferred said lease to the said Harrisons, who from that time received the rents for said ferry;" from which they insisted the Jury might presume a grant from the State or the Inferior Court to such ferry. The Court rejected the testimony, and this decision is assigned as error.

They also proposed to show by proof, that they were the exclusive owners of the land, for one mile and a half above the bridge, and for one mile below; and that the erection of said bridge destroyed the value of said ferry, for which loss they insisted they ought to have compensation in damages.

The Court rejected the evidence, and this decision is assigned as ground of error.

Counsel for plaintiffs in error then proposed to prove the value of the land set apart as aforesaid, for the use of an abutment for such a bridge as the Irwinton Bridge; that is, its value as a bridge site. The Court rejected the evidence, and this decision is assigned as a ground of error.

Counsel for plaintiffs in error then requested the Court to charge the Jury, " That they should find no verdict, which could vest in said Young any title to said land, because there was no evidence before them, going to show that he had complied with the terms imposed on him as a condition precedent to the vest-

ing in him of any title to said land; and further, that the paper read to them by counsel for Young, purporting to be an affidavit, award, &c. was not to be considered by them as evidence in the case—the same not having been proved to be what they purported to be."

The Court refused so to charge, but on the contrary did charge, " That it was the duty of the Inferior Court, before the appointment of said appraisers, to have seen that all the preliminary steps necessary to said appointment had been taken—and the presumption of law was, that they had been so taken, until the contrary appeared; and if the Jury believed, from the paper read to them, and upon which the appellants had entered their appeal, that said appointment of appraisers had been made by the Inferior Court, it was sufficient for the assessment of damages before them."

To which charge and refusal to charge, plaintiffs in error excepted, and have assigned the same as grounds of error.

BENNING, for plaintiffs in error.

H. HOLT, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

I do not propose, on the present occasion, to review any of the doctrines held by this Court, when these parties were last before us, in January, 1849. See 6 *Ga. Rep.* 130. We see no reason to change or modify any of the principles then enunciated. Moreover, we agree with the counsel for the plaintiff in error, that the questions made by the record, are entirely new, and uncontrolled by any previous adjudications which we have made. It is true, that the argument which has been submitted by Col. Benning, controverts some of the positions which we endeavored to establish in the previous case. His bill of exceptions, however, steers clear of them, and we are content to address ourselves exclusively to that.

[1.] The Act of 1837, incorporating the Irwinton Bridge Com-

pany, provides that if either party shall think proper, they may appeal to the Superior Court of Randolph County, and have the damages assessed by the appraisers, for the land taken for the eastern abutment of the bridge, ascertained by the verdict of a Special Jury.   An appeal was entered in this case by the owner of the land, and the first error complained of is, that the presiding Judge held, that the opposite party was entitled to open and conclude.

The corporation brought this case into Court.   They were the movants or actors, and the appeal does not change the relation of the parties as they originally stood.   The damages in this, as in all other cases of appeal, have to be assessed, *de novo*, upon the evidence produced before the Special Jury.   On this point, then, we think the judgment of the Circuit Court was correct, and ought to be affirmed.

A preliminary motion was made by the Harrisons, to quash the whole proceeding, upon the ground that the award from which the appeal was entered, by a majority only of the appraisers, and not by the whole number.   Counsel waives this objection, on account of a decision already rendered at this term, in the *mandamus* case between *Bell and Strange,* covering this exception.

[2.] Counsel for the appellants offered to set up a title, by prescription, to their ferry over the Chattahoochee river ; that the Harrisons, and those under whom they claimed, had been in the continuous and uninterrrupted use of this public easement, since the year 1832, and they claim compensation for this disturbance of their franchise.

There is no doubt that seven years' uninterrupted user of this ferry, would be *prima facie* evidence, at least of a prescriptive right.   Proof of a regular usage for twenty years in England, (in this State seven,) not explained or contradicted, is that upon which many private and public rights are held, and sufficient for a Jury in finding the existence of an immemorial custom.  2 *Barn. & Cres.* 54. 2 *Saund.* 175, *a. d.  Peake's Ev.* 336.  2 *Price's R.* 450. 4 *Ib.* 198.   Every such claim is good if, by possibility, it might have had a legal existence.  1 *Term Rep.* 667.   And Lord

*Kenyon* is reported by Lord *Ellenborough*, in *Johnson vs. Ireland*, (11 *East*, 284,) to have said, that he would not only presume one, but one hundred grants, if necessary to support such a long enjoyment.

But the difficulty here is, that the commencement of the user runs back only to 1832, which is within less than seven years of the time when the charter for this bridge was granted by the Legislature. The party, therefore, cannot claim title by prescription, and the Court was right in rejecting the evidence.

[3.] Had the proof been sufficient to sustain this prescriptive claim, we understand the constitutional doctrine to be now well settled in this country, that a grantee takes nothing by implication; and the right set up by the Harrisons, not being *exclusive* in its terms, the subsequent charter conferred on the Irwinton Bridge Company did not impair their ferry franchise. *Charles River Bridge vs. Warren Bridge et al.* 11 *Peters' Rep.* 420.

[4.] Counsel for the Harrisons then proposed to prove the value of the land seized and occupied by the company *as a bridge site*, and that the land for the western abutment cost the company $6000, and that the location on the eastern side of the river was worth equally as much, and insisted that the value of the land for this and all other legitimate purposes, was proper to be submitted to the Jury, to enable them to estimate correctly the damages to be paid by the company. But this the Court refused, and restricted the evidence to the actual value of the land for its agricultural and productive qualities.

When land or any other property is taken for public use, the owner is entitled to compensation for its whole value;—not for this or that particular object, but for all purposes to which it may be appropriated. Suppose I have on my premises a waterfall, admirably adapted to machinery, and a portion of my land is seized and applied to the erection of a bridge or the construction of a railroad, so as to render the water-power unavailable; in computing my damages, ought not this fact to be taken into consideration? The value of land or any thing else, is its price in the market. Concede, then, that the right to erect this bridge is not in the Harrisons, but has been bestowed by the State

upon this company, ought not the owners of the land to be paid for the worth of the site to the company? Who, in making investments of capital in real estate, is not influenced by the consideration, that it will be valuable for a town, bridge, ferry, mill, manufacture, &c.? We hold, therefore, that our brother *Warren*, who ruled this case below, was mistaken as to the law which regulates this branch of the investigation.

[5.] But this is not the only injury for which the Harrisons are entitled to compensation. They hold under grants from the State, all the land for several miles on the stream, above and below the bridge. And while we distinctly repudiate the proposition, that these grants carry with them, *as an appurtenance*, the privilege of keeping a public ferry, we admit that they take under it a right of private ferry for themselves and their families. This incorporial hereditament passes with the conveyance of the fee, *cum pertinentiis*. So far as the bridge then, by its location, interferes with this right, the proprietors are entitled to remuneration. If there was but one crossing place, and that was occupied by the bridge, so as to force the owners of the adjoining lands to pay toll, the detriment would be aggravated. As it is, they are entitled to be paid for the disturbance to their right of crossing the river at any point within their grants, if, indeed, any injury or inconvenience has resulted therefrom. This interest, feeble as it may be, may justly be considered as matter of value to the owners, and to any other party who may become the purchasers under them. If the Act of incorporation had never passed, the owners would never have been dispossessed. It is but right, therefore, that the beneficiaries under it, should make "just compensation" for every interest, however infirm it may be, which the owners have lost by reason of the passing of the Act.

Counsel for the Harrisons requested the Court to charge the Jury, that they could find no verdict for the company, which would vest in them the title to the land in dispute, because there was no evidence to show that they had complied with the terms imposed by their charter, as a condition precedent to any right to be acquired under the Act of incorporation; and further, that

the notice, affidavit, award, and other papers before them, were not to be considered as evidence, for want of proof of their execution.

The Court refused to charge as requested, but, on the contrary, instructed the Jury, that it was the duty of the Inferior Court to see that the law had been complied with, as to all these preliminary matters, and the presumption was that the Court had discharged its duty.

There are two questions presented in this part of the record—

[6.] 1st. What did the appeal bring up to the Superior Court? Certainly not the whole record, upon the law as well as the facts, as in ordinary cases of appeal, but solely the measure of damages, as found by the appraisers. If the party is aggrieved as to any misdirection as to the law, he must seek redress by *certiorari,* or in some other way. And the Judge was right in holding that the appellants were precluded from going into any inquiry of this sort, upon the issue before the Special Jury.

[7.] 2d. Is it regular, after testimony has been submitted to the Jury without objection, and no effort made to withdraw it from their consideration, to call upon the Court, after the argument has closed, to charge the Jury, that they cannot pass upon it, because it has been illegally admitted? We think not. And this case illustrates, most strikingly, the impropriety of such a practice. The complaint is, that certain papers were suffered to go to the Jury, without proof of their execution. Had this objection been made and sustained at the proper time, the evidence could probably have been supplied. Taken when it was, no argument could be heard as to its competency. It came, therefore, too late.

But again we say, that this matter was not open at this stage of the proceeding—the amount of the damages being the only question that was put in issue by the appeal.

Judgment reversed.