## BROACH *vs.* KELLY.

1. Where, in an action of complaint for land, the only plea was that the title of plaintiff was acquired from defendant, and was tainted with usury, the deed having been given to secure a usurious debt, a verdict finding for the plaintiff, but giving the defendant six months in which to pay the note, before the judgment should be executed, was contrary to law.

2. The weight of the testimony is against the verdict. Until February 19th, 1873, it was unlawful to contract for more than ten per cent interest, and a reservation of more than that rate, whether directly or indirectly, was usurious.

3. On the trial of an action of complaint for land, with a plea of usury in the title, interrogatories of a witness, taken in an action on the note between the same parties, were not admissible, the witness being alive and in an adjoining county of the state and accessible. *Aliter*, had the witness been dead or beyond the jurisdiction of the court.

4. Where, in an action of complaint for land, the plaintiff relied on a deed from the defendant, and the latter pleaded that such deed was tainted with usury and void, having been given to secure a

usurious debt, the defendant held the affirmative of the issue, and was entitled to open and conclude.

December 21, 1883.

Verdict. Interest and Usury. Evidence. Witness. Practice in Superior Court. Before Judge LAWSON. Jones Superior Court. April Term, 1883.

Kelly brought complaint for land against Broach, attaching as his abstract of title a deed from defendant to him, dated February 5, 1873.

The defendant pleaded that the deed was made to secure a usurious debt, and the title was void. The evidence was somewhat conflicting, but the respective positions of the parties may be briefly stated as follows :

Defendant insisted as follows : He had bought some land and owed a balance of purchase money amounting to $2,051. He applied to the plaintiff for the loan of it, and the latter told him that he did not have the money, but could lend him some bonds, which were at a discount. Defendant testified that on the day of the delivery of the deed, plaintiff stated to his banker (Plant) that he had decided not to let defendant have the bonds, but to let him have the money, which was done, and a note given including a usurious rate of interest. Plant testified that he sold no bonds for plaintiff; that he carried some bonds and delivered them to Isaac Hardeman, Esq., and Kelly, and that he did not know what they did with them. He swore that he paid a sum of money on Kelly's check at Blount & Hardeman's office, and his books showed that on February 6, 1873, $2,216.07 were drawn from plaintiff's bank account.

Plaintiff insisted as follows :    hen applied to for the loan, he stated that he did not have the money, but could let defendant have certain bonds. The market price for the bonds that day was eighty-seven and one-half cents on the dollar. but plaintiff had given for them a short time

v 71–45

before ninety-two and one-half cents on the dollar, and was unwilling to take less, but said he would himself give eighty-seven and one-half cents for them. Defendant said that if they were worth eighty-seven and one-half cents, he would take them; and Isaac Hardeman, Esq., who represented defendant in that transaction, but was subsequently employed by plaintiff to enforce the contract, went out to inquire the value of the bonds, and on his return reported them to be eighty-seven and one-half per cent. He testified that he then made the calculation attached to the note to arrive at the amount for which it should be given. By accident, after calculating the value of the bonds at eighty-seven and one-half per cent, and adding the difference, to make what defendant was willing to give for them, he again added $100.00; that after beginning suit for the amount and the filing of the plea of usury, this mistake was discovered, and he entered the credit of $110.00, as of February 5, 1874, ($100.00 being the amount of the error, and $10.00 the interest on that amount). Mr. Hardeman also testified that, after defendant had agreed to take the bonds, they were delivered to him (Hardeman) as attorney for defendant, in his presence, and for the purpose and with the understanding above stated, and that defendant could have seen them if he had looked [defendant denied ever having seen or received the bonds]; and after signing the note, Kelly took the bonds, and he and defendant went off together.

The note, with the calculation attached to it, and the entries on it, was as follows:

" To amount sale of bonds ........................................ $1,850 00
To amount difference...................................... 100 00
To amount cash loaned.... ,.................... ........... 266 07

$2,216 07
To interest, 12 months, at 10 per cent. .. .................... 221 60

$2,437 67

" Twelve months after date I promise to pay Washington Kelly or bearer two thousand four hundred and thirty-seven dollars and sixty-seven cents, for value received. I also promise and agree to pay all taxes that may be due the state on this note. Also to pay all counsel fees that may be incurred in the collection of this note; if I pay any portion of this note before maturity, I am to be allowed 10 per cent on said sums so paid, from time of payment to maturity of note.

This 5th of February, 1873.

(Signed) A. H. BROACH."

"Credit: $100.

Received one hundred dollars on this note. February 27th, 1875."

"I agree, and am to pay 10 per cent interest on the above note from its maturity, such being the understanding and agreement at the time · it was given, but by accident was omitted to be so stated in said note.

(Signed) A. H. BROACH."

[Indorsement on note:]

" This note is hereby credited with one hundred and ten dollars, as of date February 5th, 1874, erroneously charged in said note." [Not · signed by any one.]

### The jury found the following verdict:

"We, the jury, find for the plaintiff the premises in dispute, allow-· ing the defendant six months to redeem the land by paying principal, interest a d attorney's fees at ten per eent, and costs of the suit."

The defendant moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court admitted in evidence the inter-· rogatories of James H. Blount, Esq., taken in an action on the note to secure which the deed was made,—counsel for· defendant objecting that the case was different and the· witness not dead or inaccessible. [The court stated in a certificate to the motion that, having tried the case arising· on the note, it appeared to him that the issues were the· same; that counsel for plaintiff stated that they, or one of· them, understood that all of the depositions in one case could be read in the other; that there was such an agreement in presence of the court as to the depositions of

Plant, and that the senior counsel for defendant was consenting that the depositions might be read.]

(3.) Because the court held that the defendant was not entitled to the opening and conclusion, although his counsel stated that their plea of usury admitted the deed set out in the abstract, and assumed the burden of proving it void for usury.

The motion was overruled, and defendant excepted.

JOHN RUTHERFORD; BACON & RUTHERFORD, for plaintiff in error.

LANIER & ANDERSON; BILLUPS & HARDEMAN, for defendant.

JACKSON, Chief Justice.

Complaint for land was brought by defendant in error against the plaintiff in error. The title of the plaintiff in ejectment was a deed from the defendant in ejectment, and the defence was that the deed was given to secure a debt which was usurious. The jury found a verdict for the plaintiff, but gave the defendant six months time to pay the note before the judgment was executed. The defendant below made a motion for a new trial, which was overruled, and the judgment overruling that motion is the error assigned.

1. One ground of the motion is that the verdict is contrary to law. We think that it is. We know of no law which authorizes such a verdict in ejectment or complaint for land, where the only issue was title or no title in the plaintiff, and where that issue turned on a single question —was there usury or not in the deed? If there was, the verdict should have been for the defendant; if there was not, it should have been for the plaintiff, with no six months' stay of execution and permission to retain the land, if the note was paid at the expiration of or within that time. No equitable plea was filed, and no pleadings

of any sort were made whereby such a verdict could have been legally returned. Defendant was hurt by it, because it shows that the issue of usury was not decided, buʊ that the verdict was a sort of compromise, and did not cover and decide the issue he made.

2. The decided weight of the testimony bears against the verdict. There is no sufficient evidence of a *bona fidɑ* sale of the bonds to the defendant or to anybody else to get the money for the defendant. On the contrary, if Mr. Plant is to be credited and his book be correct, the plaintiff got the money from his bank, where he had it all the time, checked it out and paid it to defendant, and the real transaction was a loan of that money. The bond affair was a mere device to cover the exaction of usurious interest for the loan of money plaintiff had on deposit at Plant's bank; and if more than ten per cent was put in the note for that loan, no mɑtter how covered up, it was usurious. The law, at the date of this transaction, 5th of February, 1873, was that the taking and reserving, or contracting to take or reserve, either directly or indirectly, a greater sum for the use of money than the lawful interest, constitutes usury; and all titles to property which form any part of a contract so affected and tainted are void. Code of Clark, Cobb & Erwin, §§2023, 2024. Until the 19th of February, 1873, when an act was passed allowing unlimited interest by contract, none beyond ten per cent was legal by contract, but all beyond was usury. See acts of 1873, and 56 *Ga.*, 210–212. It seems to us clear from the evidence, and we do not know that it ɪs disputed, that more than ten per cent was exacted; and if in reality there was no sale of the bonds, but they were merely used to cipher up the amount of the note given for the loan, or to cover up the exaction of usury, then, the consideration of the deed being usurious, it passed no title, and the title remained in the defendant below. The taxes exacted, the calculation on the face, or rather pasted above the note, all go to show usury, if there was no *bona fide* sale of

bonds; and no sufficient evidence of that fact is in this record. See further, 2 Peters, 527; 9 Ib. 359; 6 Monroe, 158; Doug. R., 736; 3 Camp., 375; 1 Cowp., 112.

3. The interrogatories of Blount were improperly admitted in evidence. They were taken in complaint on the note; not in this suit for the land.

At the time of the trial, Blount was alive and accessible. Had he been dead or beyond seas—without the jurisdiction of the court—then the interrogatories would have been admissible. Code, §3782. That section reads that "the testimony of a witness, since deceased, or disqualified, or inaccessible for any cause, given under oath in a former trial, upon substantially the same issue and between substantially the same parties, may be proved by any one who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." Of course his written answers to interrogatories would therefore, by the spirit of the section, be admitted in case of death or inaccessibility; but we know of no law admitting them when the witness is alive and in an adjacent county of the state at the time of the trial.

4. The defendant below held the affirmative of the issue that the deed was usurious, made by his plea, and was entitled to open and conclude. 24 *Ga.*, 211; Code, §3758; 56 *Ga.*, §351; *Ocean Steamship Co. vs. Williams*, 69 *Ga.*, 251.

In so far as the rulings of the court, the charges and refusals of requests to charge, conflict with the views above written, they are erroneous; and for the reasons above stated the verdict should have been set aside, and a new trial granted.

Judgment reversed.