ORR & HUNTER *v.* GARABOLD.

85　373
113　14

85　373
126　824

1. The verdict is in accordance with law and evidence.
2. It was right to refuse a nonsuit.
3. A charge to the effect that if a prudent man should recklessly cross a street in a city without looking or listening, and could have ascertained that a vehicle was about to pass if he had looked and listened, and the vehicle hurt him, the law says this is negligence *per se* on his part, would have been erroneous.
4. If mortality tables were withdrawn from the jury, who were instructed by the court to pay no attention to them, there is no ground for new trial because of their previous admission in evidence.
5. The admission of testimony after plaintiff has closed his evidence, over objection that it is not in rebuttal and should have been introduced in chief, is within the discretion of the trial court.
6. No request for a charge on contributory negligence having been made, and it being doubtful whether such a charge was applicable to the facts, omission to charge on that subject was not error.

April 25, 1890.

Evidence. Verdict. Nonsuit. Charge of court. Negligence. Practice. Before T. S. MELL, Esq., judge *pro hac vice.* City court of Clarke county. September term, 1889.

The nature of the action will appear from the report of the testimony. For the plaintiff, in chief, it appeared that about dark he was going down Lumpkin street in the city of Athens, intending to cross the street. Three drays or cotton-wagons came rapidly down the street, and he stopped until they passed. He then started across. When he got a little way into the street another dray came rapidly down, and he tried to get out of the way; but before he could get to the sidewalk, still another turned into Lumpkin street from Clayton street (which crossed Lumpkin), driven very rapidly and recklessly, and struck and knocked him down. The evidence tended to show that these drays belonged to Orr & Hunter, a firm engaged in the cotton business and the running of drays, and were returning to where

it was customary to put them up for the night, after having been engaged in Orr & Hunter's business during the day. Plaintiff attempted to cross the street by a rock crossing, though he may have deflected from it a little in attempting to get out of the way of the drays. When he was picked up he was close to it. After he was struck the drays did not stop but went right on. Both Lumpkin and Clayton streets at and near the place in question had rocky pavements, and the drays which passed before he was struck made a great deal of fuss, so that he could not hear the others coming. He saw the one by which he was struck just before it struck him, but it was too late then for him to get out of the way. It is possible that he could have seen some little distance down Clayton street, but he started across after the first three passed, without looking. He testified that he was not where he could look down Clayton street, that he could not see down Clayton street and see them coming, and that he did not look down there. The injuries inflicted upon him, if the testimony of his witnesses is to be believed, were of such a character as to warrant the amount of the verdict. He had not recovered entirely from them at the time of the trial, but the evidence indicates that they are not likely to be severe permanently. There was evidence that about the time of the injury, drivers of Orr & Hunter's drays were fined for fast driving on the occasion in question. Isaac Scott was a driver for Orr & Hunter at that time. One Vail testified that after the injury, he was in the office of defendants, and Orr told Hunter he had received notice from plaintiff's attorney, and asked what they should do about it, and Hunter said he would pay no attention to it. Witness then remarked that he thought, as the negroes had been fined, Orr & Hunter had no more to do with it, and Orr said he thought so too. Plaintiff's son testi-

fied that after the injury, he saw Hunter, who said he was sorry the accident happened, and that plaintiff was run over by one of his drays, and that if he could discover the driver he would turn him off and punish him to the extent of the law.

The evidence for the defendants tended to show that, about the time in question, five of their drivers were up before the city council for fast driving on Broad street; three of them were found guilty, one was discharged, and the other, who was Scott, could not be found; and the witness who so testified (a policeman) never had seen him since. There was evidence that the damage was not done by defendants' drays; that Isaac Scott was driving at that time one of defendants' drays, but only temporarily, having taken the place for a few days of one of the regular drivers, who was sick; but that Scott was not hired by defendants, though possibly he was hired to take the sick driver's place by some of his fellow-drivers. This driver, however, testified that he did not pay Scott any wages and did not know who employed him. There was also evidence that the plaintiff could have seen some distance down Clayton street and could have seen a team coming up that street; and that after the injury he stated that it was dark, he could not tell anything about the team, and did not know whose team it was that hurt him nor the name of the driver. There was only one case against defendants' drivers for fast driving, at or about the time in question. Hunter denied that he said to plaintiff's son that it was defendants' dray which inflicted the injury. He did not and does not know who did it; did his best to find out, and would have punished whoever it was; if Isaac Scott was in their employment at the time, he (Hunter) did not remember it, and he knew most of the drivers; he had no recollection of ever having such a conversation as that testified to by Vail, and did not remember hear-

ing Orr say, in Vail's presence, anything about the drivers having been punished. As to this he was corroborated by Orr.

Among other witnesses introduced by plaintiff in rebuttal was one Perry. He testified that he was near plaintiff when plaintiff was hurt, and that he recognized the teams to be defendants', having been accustomed to see them and being acquainted with the class of mules and their appearance. He did not know any of the drivers; it was too dark to recognize them.

The jury found for plaintiff $500. The defendants moved for a new trial on the grounds stated in the opinion. The motion was overruled, and they excepted.

THOMAS & STRICKLAND, for plaintiffs in error.

T. W. RUCKER, by J. H. LUMPKIN, *contra.*

BLANDFORD, Justice.

1. A verdict having been rendered in favor of the defendant in error against the plaintiffs in error, a motion was made for a new trial upon the ordinary and general grounds in such motions, that the verdict was contrary to law, contrary to the evidence, strongly and decidedly against the weight of the evidence and the principles of law. We think the verdict is in accordance with the law as applicable to the facts of this case, and that the finding of the jury is sustained by the evidence.

2. The 4th ground of the motion is that the court erred in refusing to grant a nonsuit at the close of plaintiff's evidence. We think there was sufficient evidence to have authorized the case to go to the jury, and that the ruling of the court refusing to grant a nonsuit was right.

3. The 5th ground of the motion complains that the court refused to give a certain charge therein set out, to the effect that it is the duty of every prudent man to

take reasonable precautions against injury to himself; that when he is about to cross a street in a city, the law makes it his duty to look and listen to see if any vehicle is about to pass, and if he should recklessly cross the street without looking or listening, and could have ascertained that a vehicle was about to pass if he had looked and listened, and the vehicle hurts him, then the law says it is negligence *per se* on his part, and he would not be entitled to recover. We think the court did right to refuse this charge. What was negligence under the facts of this case was a question for the jury; hence, it would have been manifest error to have charged as requested in this ground of the motion. Negligence under such circumstances is based both upon law and fact to some extent; but the law does not say what is negligence *per se* in a case of this kind.

4. The 6th ground of the motion alleges error in admitting the mortality tables in evidence. The plaintiffs in error can take nothing on this ground because it appears that the mortality tables were withdrawn from the jury, and the court instructed the jury to pay no attention to them.

5. The 7th ground of the motion complains of error in admitting the testimony of Steve Perry, after plaintiff had closed his evidence, over the objection of defendants, because said testimony was not in rebuttal and should have been put in chief. This court has frequently decided that it is a matter of discretion with the trial court whether it will or will not admit testimony at any stage of the case; and when such testimony appears to be pertinent and relative, we see no error in admitting the same, particularly as in this case the plaintiffs in error made no motion to continue the case, or made any suggestion to the court of their inability to meet the testimony of this witness.

6. The 8th ground of the motion alleges as error that the court did not charge the law of contributory negligence. There was no request on the part of plaintiffs in error for such a charge to be given by the court, and we doubt much whether such a charge should have been given, even had it been requested, under the facts of this case. So we think the court committed no error in omitting to charge the jury as specified in this ground.    *Judgment affirmed.*