UNITED STATES v. A CERTAIN TRACT OR PARCEL OF LAND IN CHATHAM COUNTY, GA., et al.

No. 155.

District Court, S. D. Georgia, Savannah Division.

Sept. 24, 1942.

Griffiths, of New York City, and E. J. Phillips, of Cleveland, Ohio, for Savannah Shipyards, Inc.

LOVETT, District Judge.

The nature of these proceedings, the statutes under which instituted, conformity with state procedure, etc., are discussed in the opinion of this court of March 30, 1942 (44 F.Supp. 712) and will not be repeated.

Dissatisfied with the jury's verdict awarding compensation to the owner-condemnee, the government asks for a new trial. Thirteen grounds are set out in the motion. They will be considered in the order they are presented.

The first four grounds are the usual general grounds familiar under the Georgia practice, viz., that the verdict is contrary to evidence, against the weight of the evidence, without evidence to support it, and therefore contrary to law. There was ample evidence to justify the verdict. A verdict even for a larger amount would have been authorized by the evidence. I can not say the verdict is against the weight of the evidence. Nor do I consider it excessive, as contended in the fifth ground of the motion for a new trial.

In ground 5a it is said that the judgment providing for interest at the rate of 7 per cent per annum from the time of the taking of the property in condemnation [1] is also excessive. Under the Georgia practice an exception to a judgment, as distinguished from a verdict, is not to be made by motion for new trial. It should be made by motion to amend or to set aside the judgment, or by direct exception on appeal. See Magid Orchards Corp. v. Moody, 178 Ga. 222(3), 172 S. E. 464, and cases cited. On the trial of this case, by consent of counsel, the jury did not fix the rate of interest; they merely decided interest should be allowed, and the court fixed the rate at 7 per cent per annum, the legal rate in Georgia where the rate is not named in a contract. Ga. Code (1933) §§ 57-101, 110-304. Putting aside, however, any technical rule of state

Joseph F. McPherson, Asst. Atty. Gen., of Washington, D. C., and J. Saxton Daniel, U. S. Atty., and Green B. Everitt, Asst. U. S. Atty., both of Savannah, Ga., for the United States.

Edmund H. Abrahams and David S. Atkinson, both of Savannah, Ga., Chas. H.

---

[1] The property in condemnation was taken in possession by the government on Jan. 3, 1942. The Declaration of Taking Act (40 U.S.C.A. § 258a) was not utilized. No deposit of estimated just compensation was made, and therefore no partial disbursement could be made.

The trial on the issue of compensation began July 6, 1942 and a verdict was returned by the jury on August 7, 1942. Subsequently the government deposited $900,000.00 in the registry of the court, without prejudice to the parties, to be applied on the final judgment.

procedure, the complaint as to the rate of interest is without merit. Except in cases where the Declaration of Taking Act is invoked, and then only because that act fixes the rate of interest, the federal rule is well settled that interest runs from the date of taking, and federal courts are usually constrained to select the local rate of legal interest as the one proper and fair in condemnation proceedings, even though it be conceded that conformity does not so require. United States v. Rogers et al., 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566; Seaboard A. L. Ry. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; United States v. Sargent, 8 Cir., 162 F. 81; United States v. 20.08 Acres of Land, etc., D.C., 35 F.Supp. 265(4), 267. This rule may not be wholly logical, and has resulted in the payments of rates as low as 4% in some cases (United States v. 167.55 Acres of Land, etc., D.N.D.S.E.D. 1935, Law No. 812, unreported) [2] and as high as 7% (Brown and S. A. L. Ry. cases, supra) and 8% (United States v. First Nat'l Bank, D.C., 250 F. 299) in others, but it is hard to see what else the courts could do. If some more satisfactory guide than local law is available and is supplied, the courts may use that, i. e., the current interest rates or other satisfactory evidence as to a "reasonable rate of interest" (Cf. United States v. Creek Nation, 295 U.S. 103, 104(6) 111, 112, 55 S.Ct. 681, 79 L.Ed. 1331; United States v. 20.08 Acres of Land, etc., supra, 35 F. Supp. at page 267), but none has been furnished here.

The sixth ground of the motion complains of evidence, received over objection, of the cost to the condemnee of the property condemned. It is conceded that cost may be relevant in some cases, but it is said no proper predicate was laid to justify receiving this evidence, and that the costs were excessive. The jury, under the instructions given, were left to determine whether the cost represented, illustrated or tended to establish fair market value at the time of the taking. That was their function, not the court's. The court could not say the cost was excessive. It must be remembered the property taken was a shipyard in course of construction, with the land on which it was being built and the machinery and personal property used or usable in connection with it. There was no established market for property of this kind. The officers of the company owning it testified the costs were reasonable, proper and necessary under the conditions existing. The shipyard was being built for war purposes, the U. S. Maritime Commission had let a contract to the owner to build ships, and the need for haste was great. Material and machinery were hard to get. Perhaps more was paid for some of these things than they would have cost in normal times. But there was no satisfactory evidence of any padding of accounts or false entries in the records of costs, and I am unable to see why the jury should not have had the benefit of the figures showing the cost, recent as it was, to consider along with all the other evidence in reaching a conclusion as to fair market value. While there is some authority to the contrary, evidence as to the price paid for property sought to be taken is generally held to be admissible as some evidence of its market value, except where the purchase was so remote in point of time from the condemnation proceedings as to afford no fair criterion of present value or it is otherwise shown to have no probative value. See 29 C.J.S., Eminent Domain, § 273, p. 1267 and note 31; 18 Am.Jur. (Eminent Domain) § 351, p. 994, note 10.

The seventh and eighth grounds of the motion for new trial may be considered together. They relate to the court's rulings on the burden of proof. The government alleged no market value or just compensation in the petition for condemnation. Several months before the case was called for trial the condemnee formally asked that the condemnor be required to make and file some pleading setting out the estimate of just compensation on which reliance would be placed and as to which an issue could be properly framed. The government claimed at that time its appraisal had not been completed. Later, in advance of the trial, government's counsel was informed if the petition in condemnation was not amended before or at the time of trial so as to allege the value claimed by the condemnor to represent the fair market value or just compensation to be paid to the owner, the latter would offer to assume the burden of proof. When the case was called for trial, government's counsel was again given an op-

[2] No opinion for publication.

portunity to amend, the court informing him that unless he named some value, or an amount not exceeding which he would claim the jury could not find, the burden of proof would be placed upon the defendant, as it had formally presented an amendment admitting all of the government's allegations and offering to assume the burden. Counsel for the government declined to amend, stating the government was unwilling to commit itself to any definite amount until the evidence was submitted, though (and this is hard to understand) within a very few minutes thereafter in his opening statement to the jury he orally named a maximum above which he said the evidence for the government would show the jury should not go in awarding compensation. Upon the refusal to amend the court allowed the condemnee's amendment, ruled the burden of proof was on it, and allowed the condemnee to go forward with evidence and to have the opening and concluding arguments to the jury.

 All parties here seem to agree that burden of proof is procedural, and under the *conformity section of the Condemnation statute* [3] is to be determined by the laws of Georgia. The Georgia courts generally hold the burden of proof is on the condemnor, and this court has held the same where the *Declaration of Taking Act was invoked and the pleadings showed the value claimed by the government.* See Streyer v. Georgia So. & Fla. Ry. Co., 90 Ga. 56, 15 S.E. 637; Georgia Power Co. v. McCrea, 46 Ga.App. 279, 167 S.E. 542; State Highway Board v. Shierling, 51 Ga.App. 935, 936(3), 181 S.E. 885; United States v. 76,800 Acres, More or Less, of Land, etc., D.C., 44 F. Supp. 653.[4] In none of these cases, however, does it appear that the condemnor refused to allege a value, or that the condemnee in his pleadings admitted *all* the allegations of his adversary's complaint and offered to assume the burden of proof. Moreover, these Georgia cases seem to have been brought under Ga.Code (1933), §§ 36-201 to 36-607 et seq., while this proceeding may be governed by the later Act of 1914, Ga.Laws 1914, p. 92, as amended, Ga.Laws Ex.Sess.1937–38, pp. 251, 253, now embodied in Ga.Code, § 36-1104 et seq., and the procedure is not identical under the different sections. However that

may be, the Georgia courts have long recognized that a defendant in his plea may admit a prima facie case for the plaintiff, and if he does so before the plaintiff introduces evidence, the burden of proving his defense is on him, and he is entitled to open and conclude. Ga.Code (1933), § 38-103, and annotations; Broach v. Kelly, 71 Ga. 698(4); Widincamp v. Widincamp, 135 Ga. 644, 70 S.E. 566; Roberson v. Weaver, 145 Ga. 626(3), 630, 631, 89 S.E. 769; Norman v. McMillan, 151 Ga. 363(1a), 364(3), 107 S.E. 325; Wood v. Davis, 161 Ga. 690, 131 S.E. 885; Payne v. Thebaut, Ex'x, 180 Ga. 758(1), 180 S.E. 725; Tilley v. King, 190 Ga. 421(3), 426, 427, 9 S.E.2d 670; Richter Bros. v. Atlantic Co., 59 Ga.App. 137, 140–143, 200 S.E. 462. This the condemnee did, and I can find no reason for denying the right to open and conclude to the party who held the affirmative of the only issue before the court, viz., the amount of just compensation to be paid to the owner of the property taken in condemnation. The only party to the case asserting a value of the property taken was the condemnee. The government was given every opportunity to amend and allege the value of the property it had taken. And the government refused. Just why I do not yet understand. Not because the trial was hurried and insufficient time allowed to make an estimate of values. Six months elapsed after the taking before the trial. Evidence of value was produced by the government, much of it in great detail and in writing. The trial consumed five weeks. The case was fully developed by both sides. It would have been an idle thing to permit condemnor to prove the allegations of the petition for condemnation when those allegations were admitted by the condemnee in its amended plea. The weight of authority is that the landowner has the burden of showing the damages suffered by him, although as indicated there is authority to the contrary. See 18 Am.Jur., § 342, note 19; 29 C.J.S., Eminent Domain, § 271, note 82; Ralph v. Hazen, 68 App.D.C. 55, 93 F.2d 68(1); Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, 96(19), 101, certiorari denied 309 U.S. 688, 60 S.Ct. 889, 84 L. Ed. 1030; United States v. Crary, D.C., 2 F.Supp. 870, 871(16) (18), 877, citing

---

[3] 40 U.S.C.A. § 258.

[4] In the case cited, the government filed a "response" to the owner's "claim", and named the value contended to be the fair market value.

2 Lewis Em.Dom., 3rd Ed., § 645(426), p. 1114. I find no error in the rulings on the burden of proof.

The remaining grounds of the motion for new trial relate to evidence of witnesses offered by condemnee in rebuttal, and admitted over objection, who gave their opinions as experts concerning the reproduction cost of the property taken; and, as a corollary, the court's failure to charge the condemnee was bound by the highest proved value developed by its testimony in chief, and the instruction that the pleadings controlled as to maximum award of compensation. It is necessary to recite some of the facts that may not appear in the record to understand properly the rulings that were made.

During the early stages of the trial, in an effort to shorten the testimony, a stipulation in writing was made by counsel, approved by the court and filed, whereby appraisers representing the respective parties were to meet and agree, so far as they were able, upon a complete list of the buildings and other fixed structures, as taken in condemnation, showing state of completion, material in place, and also the personal property taken and its value. This proved quite an undertaking and consumed weeks of time. As I now recall it, the condemnee had rested its case before the final agreement of the appraisers ("appraisement" it was called) was put in form and offered in evidence as defendant's exhibit 74. If offered earlier, it was certainly near the close of the evidence in chief of the condemnee. The appraiser representing condemnee was a retired naval officer familiar with the building of shipyards; the other representing condemnor was a construction engineer. During the course of the trial counsel for the respective parties had many conferences with the court in chambers during recesses discussing the order of testimony, arranging for the presence of absent witnesses who came great distances to testify, and outlining their plans for expediting the trial. At one of these conferences condemnee's counsel inquired if he might offer the testimony of his appraiser (and his assistant) in rebuttal, as they were both then busily engaged in trying to reach agreements with condemnor's appraiser on the several hundred items in controversy. It was represented to the court the trial might be delayed otherwise. He was given that privilege. Government's counsel now says he was neither present at, nor informed of, this conference and its result, and I accept his statement. It is impossible for me now to remember in detail who was present at the many interviews with the many counsel appearing in the case. But the testimony given in rebuttal by these two witnesses was only cumulative of other testimony along the same lines offered in chief by condemnee and also similar to testimony offered by condemnor. It related principally to estimates of reproduction cost. Each witness who qualified as an expert—and all who gave such estimates did—gave his estimate in writing, they were received with explanations, subject to cross examination, and given exhibit numbers. These estimates offered by both parties necessarily contained summaries and recapitulations of detailed figures (these details were called "breakdowns" by the witnesses), and, in order to facilitate cross examination, each party was required to furnish to the other twenty four hours before he called such expert witness both the estimate and the breakdown the witness had compiled. This was done as to the two witnesses called in rebuttal (one of whom gave no testimony of any real value, contenting himself with saying he assisted the other in the preparation of the estimate and knew it to be correct). While government's counsel objected to the evidence in rebuttal and earnestly argued it should have been offered in chief, he did not plead surprise or ask indulgence to meet or contradict the testimony. There was already in evidence much testimony from witnesses offered by the government which contradicted what these witnesses in rebuttal had to say. If more time had been asked, and good grounds shown, more time would have been allowed government's counsel to answer the rebuttal testimony. It is not now claimed that prejudice resulted in this respect, or that there was available other testimony of a contradictory nature that would have been offered had these witnesses testified in chief. If technical

error was made, I fail to see how it affected the substantial rights of the parties. Error in adverse ruling without adverse effect is error in vacuo. It may subject the erring Judge to criticism but not the case to re-trial. R.S. § 726, 28 U.S.C.A. § 391. There was no error, however, in my opinion. The admission of testimony after plaintiff has closed his case, over objection that it is not in rebuttal and should have been introduced in chief, in Georgia has long been held to be within the discretion of the trial court. Bigelow v. Young, 30 Ga. 121(3); Orr & Hunter v. Garabold, 85 Ga. 373(5), 377, 11 S.E. 778; City of Atlanta v. Hampton, 139 Ga. 389(1), 391, 77 S.E. 393; Autrey v. State, 23 Ga.App. 763, 765, 99 S.E. 389, and cases cited. I find nothing in Chateaugay Ore & Iron Co. v. Blake, 144 U.S. 476, 484, 12 S.Ct. 731, 36 L.Ed. 510; Marande v. Texas & P. Ry. Co., 2 Cir., 124 F. 42, 47; Light v. Toledo, St. L., etc., Co., D.C., 208 F. 158; Postal Tel. Cable Co. v. Northern Pac. Ry. Co., 211 F. 824, relied on by the government, contrary to the Georgia Decisions. All of these cases recognize the order of testimony is within the court's discretion.

■■■ A few words perhaps should be added as to the twelfth and thirteenth grounds of the motion for new trial. There complaint is made of the court's charge to the jury that the verdict could not exceed the amount set out in the condemnee's plea as the value of the property taken, and it is said the court should have charged the condemnee was bound by the highest value shown by its case (evidence) in chief. Generally, as to maximum amounts recoverable parties are bound by their pleadings and the jury is not concluded by the opinions of witnesses as to damages or value. These assignments of error also overlook the fact that, though no witness for condemnee testified in chief in exact words (dollars and cents) to so high a figure as the one pleaded, the witnesses gave precise figures only as to actual cost or estimated cost of reproduction and not as to fair market value. There was other testimony tending to show there had been great enhancement in the values over either actual or reproduction cost because of the national emer-

gency. The very fact that this shipyard was approaching completion and was in great demand for building ships, there being a lack of adequate facilities of this kind throughout the country, it was said made it worth more than actual or reproduction cost—how much more, if anything, was for the jury to say. Besides, the jury had a view of the premises. Under these circumstances the jury were not bound by the opinions of any of the witnesses, whether in chief or in rebuttal. See The Conquerer, 166 U.S. 110, 111, 131–133, 17 S.Ct. 510, 41 L.Ed. 937; United States v. 76,800 Acres of Land, etc., D.C., 46 F.Supp. 102, decided June 27, 1942, and cases cited.

The motion for new trial is overruled.