UNITED STATES TRUST CO. OF NEW YORK *v.* WABASH, ST. L. & P. RY. Co. and others.

*(Circuit Court, S. D. Iowa, W. D.* September 28, 1887.)

RAILROAD COMPANIES—MORTGAGE OF PROPERTY—RAILWAY HOTEL—RECEIVERS —INSURANCE.

The St. Louis, Kansas City & Northern Railway Company executed a mortgage to the United States Trust Company, covering the line from Pattonsburg, Missouri, to Council Bluffs, Iowa, "as said road is or may be hereafter constructed, maintained, operated, or acquired, together with all privileges, rights, franchises, real estate, right of way, depots, depot grounds, side tracks, water-tanks, engines, cars, and other appurtenances thereto belonging." Subsequently the line to Council Bluffs became part of the Wabash system, being known as the "Omaha Division." After the consolidation the Wabash Company purchased a lot in Stanberry, Missouri, and built a hotel thereon to afford accommodation for their employes and passengers. The title to the lot was taken in the name of a trustee, in order that the company might sell the hotel if proper arrangements could be made, and to prevent the mortgage from becoming a lien on the property. The trustee in the mortgage had no knowledge of this arrangement. The receivers of the Wabash system, who had been previously appointed, insured all the property in their hands, including the hotel, for the benefit of all parties interested therein. The hotel was leased and kept for the benefit, not only of the employes and passengers of the Wabash system, but of all persons desiring to stop thereat, until it was entirely destroyed by fire. After the fire, a receiver of the Omaha division was appointed, and the receivers of the Wabash system turned over to him said division, and the property appurtenant thereto. *Held,* that the hotel was to be deemed appurtenant to the railway, and that the insurance thereon was payable to the receiver of the Omaha division for the benefit of the mortgagees holding under the mortgage, and not to the receivers of the Wabash system, representing the general creditors of the Wabash, St. Louis & Pacific Railroad Company.

In Equity.

*W. A. W. Stewart,* for petitioner.

*Wells H. Blodgett* and *H. S. Priest,* for Wabash receivers.

SHIRAS, J. By exceptions to the report of Special Master Hunter, the question is presented whether McKissock, receiver of the Omaha division, is entitled to the proceeds of a policy of insurance issued upon a hotel erected at Stanberry, Missouri, for the benefit of the mortgagees claiming under the mortgage executed February 15, 1879, by the St. Louis, Kansas City & Northern Railway Company, or whether such proceeds should go to the general creditors of the Wabash, St. Louis & Pacific Railway Company, represented by the receivers Tutt and Humphrey. The mortgage executed by the St. Louis, Kansas City & Northern Railway Company to the United States Trust Company covered the line

from Pattonsburg, Missouri, to Council Bluffs, Iowa, "as said railroad now is or may be hereafter-constructed, maintained, operated, or acquired, together with all the privileges, rights, franchises, real estate, right of way, depots, depot grounds, side tracks, water-tanks, engines, cars, and other appurtenances thereunto belonging."

Subsequently the line to Council Bluffs became part of the Wabash system, being known as the "Omaha Division." After the consolidation in January, 1880, the Wabash company purchased a lot in Stanberry, Missouri, for the sum of $2,100, and erected a hotel building thereon. The lot was separated from the depot by a street. The hotel was built for the reason that Stanberry was a new town, without accommodations for the employes of the railway, or for passengers, and to afford needed accommodations for the employes and passengers. The title to the lot was taken in the name of J. W. Blanchard, as trustee, the purpose of this being that the company might sell the hotel, if proper and satisfactory arrangements could be made, and it was deemed desirable by the company to put the title in the name of a third party, so that such sale might be effected without the question of the lien of the mortgage coming up. It does not appear that the trustee in the mortgage had knowledge of this arrangement, or in any manner consented thereto.

On the thirteenth of June, 1885, Messrs. Tutt and Humphreys, who had been previously appointed receivers of the Wabash road for the benefit of all parties interested therein, took out a policy of insurance upon the property coming into their hands as receivers, including the hotel building at Stanberry, Missouri. This building had been leased to different parties, who kept the same as a hotel for the use and benefit not alone of the employes and passengers on the Wabash railway, but of all others desiring to stop thereat. On the twenty-fifth of February, 1886, the building was destroyed by fire, the amount of the insurance being $5,000, and the loss a total one. March 7, 1886, Thomas McKissock was appointed receiver of the Omaha division, and Messrs. Tutt and Humphreys were directed to turn over to him the said division, and property appurtenant thereto. If, under the facts of the case, the mortgagees under the mortgage executed February 15, 1879, by the St. Louis, Kansas City & Northern Railway Company, are entitled to the proceeds of the insurance upon the hotel, then the amount should be paid to Thomas McKissock, receiver, otherwise the same belongs to the receivers Tutt and Humphreys, representing the general creditors of the Wabash, St. Louis & Pacific Railway Company.

If the question had arisen between the mortgagees and a purchaser of the hotel property, holding a title derived from the trustee, Blanchard, it would then be necessary to determine whether such purchaser was chargeable with knowledge of the rights of the mortgagees; but this question does not arise. The point to be determined is whether, between the mortgagor and the mortgagees, this property is covered by the terms of the mortgage. The evidence shows that the lot was purchased, and the building was erected, for the benefit of the railway company, in furtherance of its business, and for the accommodation of its employes

and passengers. If, in erecting a depot at Stanberry, the company had included in the same building an eating-house and sleeping rooms, for the accommodation of its employes and patrons, I do not think it could be questioned but what the eating-house and lodging rooms would be deemed to be appurtenant to the railway. If the company, instead of including the hotel as part of the depot, erect a separate building therefor, this does not in my judgment change the rule, even if the building is not immediately contiguous to the depot, but separated therefrom by a public street. So as long as the evidence shows that the object and purpose of the company, in the erection of the building, was to use the same for the convenience and comfort of its employes and passengers, and thereby directly contribute to the proper carrying on of its business of a common carrier, I see no good reason for holding that a building so erected and used is not to be deemed appurtenant to the railway.

Furthermore, the mortgage expressly embraced, not only the depots and depot grounds, but also the "real estate" owned by the company. Under the facts of this case, it seems to me that, as between the mortgagor and the mortgagees, the property in question comes within the terms of the mortgage, and that the mortgagees are entitled to the benefit thereof. The insurance was taken out for the benefit of the parties interested, and was not an insurance on the interest of the mortgagor, as separate from that of the mortgagees, and hence the proceeds of the policy belong to the parties entitled to the property.

The order should be that the amount due on the policy should be paid to McKissock, for the benefit of the mortgagees holding under the mortgage of February 15, 1879.