CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL., APPELLEES, V. RICHARDSON COUNTY ET AL., APPELLANTS.

FILED MARCH 20, 1901.   No. 11,126.

1. **Railroad Bridge Across Navigable River Assessable by State Board.** A railroad bridge across a navigable river, owned, used and operated by a railroad company as a part of its line of road, is assessable for taxation by the state board of equalization, and not by the local assessor.

2. **Prior Decision Overruled.** *Cass County v. Chicago, B. & Q. R. Co.*, 25 Nebr., 348, overruled.

APPEAL from the district court for Richardson county. Heard below before STULL, J.  *Affirmed.*

*John Gagnon, J. E. Leyda, Reavis & Reavis* and *Smyth & Smith,* for appellants.

*Reavis & Reavis:* The bridge is not a part of the railroad line, but is a separate and independent structure, authorized by congress and not by the state.  The *Cass County Case,* 25 Nebr., 348, is decisive of this one.

*J. W. Deweese* and *Frank E. Bishop, contra:*

The railroad is an entirety.  The bridge is a part of the road.  *Union P. R. Co. v. Hall,* 91 U. S., 352; *Brooks v. Railway Co.,* 101 U. S., 451.

NORVAL, C. J.

In 1895 the township assessor of Rulo, in Richardson county, assessed at the sum of $42,500 the west half of the railroad bridge of the Chicago, Burlington & Quincy Railroad Company which spans the Missouri river at the village of Rulo.  Taxes for said year were levied on said valuation for state, county, village, township and school district purposes.  This suit was to enjoin the collection of certain of the taxes so imposed on various grounds, among others, that the bridge in question is a part of plaintiff's line of railroad, and no part of the bridge is assessable by the local assessors, but is assessable only by the state board of equalization.  The district court perpetually enjoined the collection of the taxes in controversy, and the defendants appeal.

It is conceded by defendants that the bridge over the Missouri river at Rulo, on the west half of which the taxes in dispute were levied, is owned and used by plaintiff as a part of its continuous line of track.  The principal question in the case, and the only one to which we shall advert, is whether the state board of equalization or the local assessors have the right to assess for taxation

the railroad bridge at Rulo.  The defendants claim that
the bridge is no part of the railroad line, but is a sepa-
rate and independent structure, and, therefore, is as-
sessable for taxation by the local assessor.  This con-
tention is not without authority to sustain it.  In *Cass
County v. Chicago, B. & Q. R. Co.*, 25 Nebr., 348, it was
decided that the railroad bridge of plaintiff over and
across the Missouri river at Plattsmouth was assessable
locally.  If that decision is followed, the judgment of
the court below in the present case can not be sustained.
The opinion in that case is directly assailed as unsound,
and we are asked to take up and decide the question
anew, which we shall at once proceed to do.

Sections 39 and 40, article 1, chapter 77, Compiled
Statutes, 1895, relate to the assessment of railroad and
telegraph property, which we here reproduce:

"Sec. 39. The president, secretary, superintendent, or
other principal accounting officer within this state of
every railroad or telegraph company, whether incorpo-
rated by any law of this state or not, when any portion
of the property of said railroad or telegraph company is
situated in more than one county, shall list and return
to the auditor of public accounts for assessment and
taxation, verified by the oath or affirmation of the person
so listing, all the following described property belong-
ing to such corporation on the first day of April of the
year in which the assessment is made within this state,
viz: the number of miles of such railroad and telegraph
line in each organized county in this state and the total
number of miles in the state, including the roadbed, right
of way, and superstructures thereon, main and side
tracks, depot buildings, and depot grounds, section and
tool houses, rolling stock, and personal property neces-
sary for the construction, repairs, or successful operation
of such railroad and telegraph lines; *Provided, however*,
That all machine and repair shops, general office build-
ings, store houses, and also all real and personal prop-
erty, outside of said right of way and depot grounds as

aforesaid, of and belonging to any such railroad and telegraph companies shall be listed for purposes of taxation by the principal officers or agents of such companies, with the precinct assessors of any precinct of the county where such real or personal property may be situated, in the manner provided by law for the listing and valuation of real and personal property.

"Sec. 40. The return to the auditor of public accounts herein provided shall be made on or before the fifth day of April annually. If the return aforesaid be not received by said auditor by the tenth day of April, he shall thereupon proceed to obtain the facts and information aforesaid in any manner that may appear most likely to secure the same correctly, and for that purpose may address a written communication to the corporation or to some officers of the corporation who has failed to make the return aforesaid. As soon as practicable after the auditor has received the said return, or procured the information required to be set forth in said return, a meeting of the state board of equalization, consisting of the governor, state treasurer and auditor, shall be held at the office of said auditor, and the said board shall then value and assess the property of said corporation at its actual value for each mile of said road or line, the value of each mile to be determined by dividing the sum of the whole valuation by the number of miles of such road or line. In making up such valuation or assessment the said board shall examine and consider the return herein required to be made, or the information procured by the auditor in default of such return, together with such other reliable information relative thereto as they may be able to procure; said board shall not assess the value of any machine or repair shop or general office building, store houses, or any real or personal property situated outside of the right of way or depot grounds of such company. On or before the fifteenth day of May, or so soon thereafter as the said board, or any two thereof, shall have made and determined said valuation and assess-

ment, the auditor shall certify to the county clerks of the several counties in which the property of the aforesaid corporation, or any part thereof, may be situated, the assessment per mile so made on the property of such corporation, specifying the number of miles and amount in each of such counties. All such property shall, for the purpose of taxation, be deemed 'personal property,' and be placed on the tax list as hereinafter provided."

From a reading of the foregoing sections it will be seen that all machine and repair shops, general office buildings, storehouses and all real and personal property of a railroad company outside its right of way are required to be assessed by the local assessors; and all other property of a railroad company is required to be valued for taxation by the state board of equalization. It needs no argument to show that the railroad bridge at Rulo is neither a machine shop, a general office building or a storehouse; and if this bridge, within the meaning of the statute, is neither real or personal property outside the right of way of plaintiff, it is not to be assessed by the local assessor, but is taxable only by the state board of equalization. There is no claim that it is exempt from taxation, the only controversy being as to the jurisdiction of the taxing powers. If it is inside—i. e., a part of—the right of way, as the term is employed in the act, then it must be assessed by the state board, otherwise not. The meaning of the term "right of way," as employed by the statute, is important, indeed, decisive of the question. Counsel for defendants insist that as the right to construct this bridge over the river, the boundary between two states, could not be conferred upon the corporation by the legislature, but by congress only, it should be taxed by the local authorities. Why should the question of whether the legislature had power to confer upon the corporation the right of eminent domain in this instance control in deciding as to the right of taxation? What was the purpose of the legislature in requiring the right of way, road-bed and superstructure of a railway

to be assessed as a unit. A clear understanding of this purpose and intent should enable us to dispose of the question with little difficulty, and clear up the inconsistencies that now appear in former adjudications of this court upon the point. The common-sense view of the subject would seem to be that such purpose was to enable the proper authorities to distribute the avails of such taxation equitably among all the municipal subdivisions through which a road may pass, in the ratio which the number of miles within each subdivision bears to the total number of miles of road within the state, treating each mile as equal in value to every other mile, and regardless of whence came the power under which any particular portion of the road is constructed. A railroad might have vast terminals at one point, worth as much as the remainder of the line, though it extended through a dozen counties. The subdivision in which these terminals are located is not, under this law, permitted to reap an advantage over other localities, by reason of the mere accident of location; but must share its advantages with these others *pro rata*. That evidently is the reason behind and under this legislation. How a franchise has been acquired, or whether a particular portion of a line is more expensive to construct than others, is unimportant in determining whether the property should be taxed locally or otherwise. As a matter of fact, this inequality of value was the principal motive for the legislation, which sought to obviate the evils attendant upon such a state of facts. Without such inequality, no legislation would have been necessary, the general laws being in that event adequate for the purpose.

It is also decidedly fallacious to argue that either the nature of the tenure or the manner of its acquisition can be a criterion in determining the point in question. There are three legal modes of acquiring right of way: by purchase, by grant or by the exercise of eminent domain. How can any of these means of acquisition assist us in determining whether they should be taxed in one locality

or in another? Suppose a right of way to have been acquired in none of these legal ways, but that the corporation is a trespasser from one terminus to the other, that it has not the legal right to a single foot of its right of way; is not its right of way nevertheless taxable in the same manner and by the same officials as it would be, had its acquisition been attended with every legal formality? It is not denied that it is the intention of the legislature in this act to assess and tax railroads as units. Is a railroad any less a unit because perchance one part of its route may have been acquired by grant, another by eminent domain, another by purchase, and that to still another part it has no title, being a mere trespasser? Though the nature of the tenure may differ, the line itself is a continuous whole, a unit, so far as its operation and management are concerned, and so far as fitted the purpose of the legislature in adopting the legislation mentioned. In *Cass County v. Chicago, B. & Q. R. Co.*, 25 Nebr., 348, we placed a different construction upon this statute, holding that a bridge like the one in controversy was not assessable by the state board. A review of the question convinces us that our decision in that case was wrong, and we accordingly overrule it. In the opinion in that case it is argued that if it was the intention of the legislature that such structures were to be assessed as a continuation of the line of road, some additional report as to value or cost would have been required by it. We fail to see the force of the reasoning. The state board has imposed upon it, by section 40, *supra*, the duty of ascertaining the value of every mile of such road, and of all articles enumerated in section 39, or included in the generic terms therein employed. Is it any less difficult to ascertain the value of rolling stock, tunnels, viaducts, and other property of like nature than the value of a bridge? It is the duty of this board to inquire and ascertain the value of all the items therein enumerated, or implied from the terms employed; there is no requirement that the railroad corporation shall give the value

of a single article. In section 40 it is provided that the board shall ascertain and assess the value. "In making up such valuation or assessment the said board shall examine and consider the return herein required to be made, or the information procured by the auditor in default of such return, together with such other reliable information relative thereto as they may be able to.procure." The argument that the failure of the legislature to require an additional report relative to bridges is indicative that it was not the intention that such structures should be assessed by the state board, would prevent it from assessing many other items enumerated. No specifications of the items which constitute a "superstructure" are present in the act. Must it then be inferred that the rails, cross-ties and fastenings are to be assessed by the local authorities? Neither is the term "road-bed" defined. Must the embankments, fills, tunnels, culverts, trestles, bridges and viaducts be given over to localities, as. things not included in or part of the right of way? The argument to establish these propositions is as conclusive as is the one from which is adduced the conclusion that bridges across navigable streams are not part of, or "included in," the right of way of a railroad company. Nor does there seem any more conclusiveness in the argument that, as it is shown that the railroad. company, in the *Cass County Case*, charged more by the mile to passengers who traveled over the bridge than was allowed by statute for transporting passengers within the state, it must follow that such bridge was not treated by the railroad company as a part of its line, and that, therefore, it is not subject to taxation by the state board. The fact remains that, so far as the operation of and physical condition of the road is concerned, there is no difference whatever between this portion of the road and any other, except that at this point the road crosses a bridge, while at other points it may pass over soil, trestles, culverts, viaducts, or through tunnels. If the law relative to the legal sums permitted to be exacted from passengers is

violated, it is a matter for the cognizance of the proper authorities; but such violation is no test to be employed in ascertaining the legal question as to the manner in which taxes shall be imposed for public uses.

The conclusion reached is not only sustained by reason, but is supported by an unbroken line of decisions by the highest courts in the land. In New Jersey there was a statute providing that "the main stem or road-bed and track" of all railroads should be exempt from township and municipal taxation.

In *Central Railroad Co. v. Mutchler*, 41 N. J. Law, 96, the court, in construing this statute, ruled that a railroad bridge across the Delaware river was exempt from township and municipal taxation, since the bridge was a part of the main stem or road-bed and track of the railroad.

A statute of Missouri provided that railroad companies, on or before a certain date, should return to the auditor a verified statement "setting out in detail the total length of their road so far as completed, including branch or leased roads, the entire length in this state, and the length of double or side tracks, with depots, water tanks and turn-tables; * * * the total number of engines and cars of every kind and description, including all palace or sleeping cars, passenger and freight cars, and all other movable property owned, used, or leased by them" (Revised Statutes [Mo.], 1879, sec. 6866); and that the "state board" should assess all such property and the valuation be apportioned among the various counties, etc., of the state. The statute also declared (sec. 6876) that "all property, real, personal or mixed, including lands, machine and workshops, round-houses, warehouses and other buildings, goods, chattels and office furniture of whatever kind, owned or controlled by any railroad company or corporation in this state not hereinbefore specified, shall be assessed by the proper assessors in the several counties, cities, * * * wherein such property is located, under the general revenue laws of the

state." This statute was under consideration in *State v. Hannibal & St. J. R. Co.*, 10 S. W. Rep. [Mo.], 436, and the court held that a bridge of the railway company spanning the Missouri river at Kansas City, over which bridge the railway company had laid its tracks, and was operating its trains, was a part of the railroad company's road and was assessable only by the state board, notwithstanding the fact that the railroad company had planked the bridge and permitted wagons, carriages, etc., to cross the river thereon and collected tolls therefor, and that other railroad companies ran their engines and cars over and across the bridge, paying toll therefor.

The statute of the state of Illinois relating to the assessment of railroad property provided that "such right of way, including the superstructures of main, side or second track and turnouts, and the station and improvements of the railroad company on such right of way, shall be held to be real estate for the purpose of taxation and denominated 'railroad track,' and shall be so listed and valued." Revised Statutes [Ill.], 1874, ch. 120, sec. 42. The statute likewise made it the duty of the state board of equalization to assess all railroad property denominated in the act as "railroad track." Under this statute, in *Anderson v. Chicago, B. & Q. R. Co.*, 117 Ill., 26, it was held that the railroad bridge owned by the Burlington road across the Mississippi river at Burlington, Iowa, was assessable by the state board of equalization and was not assessable by the local assessor of the county in which a portion of the bridge was located.

In *Virginia & T. R. Co. v. Washington County*, 30 Gratt. [Va.], 471, 481, the court observe: "If the commissioners of the revenue, or the assessors in the different counties, should make an assessment of the railroad track, or other property within their limits, such assessment would constitute no just basis of taxation. A part of a railroad running through one county may be of little value, but if taken in connection with the whole it may be as valuable as any other part. As was said by the supreme

court of Kentucky [*Applegate v. Ernst*, 3 Bush [Ky.], 648]: 'A railroad, from one end to the other, is an entirety. Fragmentary taxation or sales might be unjustly vexatious and injurious to the owners, prevent the destination of the road, and disturb the public use and interest. To avoid such evils and absurdities the law treats a railroad and all its appurtenances as one entire thing, not legally subject to coercive severance or dislocation. In that consolidated character it must be taxed for state revenue, and cannot be a fit subject for local taxation by the separate counties through which it runs.' "

In *St. Louis R. Co. v. Williams*, 53 Ark., 58, 63, the court in its opinion says: "The requirement as to railways is that every corporation or other person owning or operating a railway shall return its road to the state board for taxation; and in estimating the value the board is required to take into consideration everything on the right of way and appurtenant to the railroad which adds value to it as an entire thing. Bridges which are on the line of the railway and are railway property are therefore to be assessed as an integral part of the railway. They fall within the exclusive jurisdiction of the state board, and the increased revenue which is derived from the road on account of them is apportioned to the several counties through which the road runs. This comes from the legislative policy of taxing each road as a unit."

The supreme court of the United States in *Union P. R. Co. v. Hall*, 91 U. S., 343, 352, decided that the railroad bridge of said company across the Missouri river at Omaha was a part of their railroad and required to be so operated.

In *Gulf R. Co. v. Morris*, 7 Kan., 210, 222, the supreme court of Kansas used this apposite language: "A railroad is an entire thing, and should be assessed as a whole. It would be almost as easy and as reasonable to divide a house or a locomotive into portions, and assess each portion separately, as to divide a railroad into portions, and assess each portion of it separately. A portion of

38

a railroad, running through one township only, would be worth but little, if any thing, while that same portion, in connection with the balance of the road, might be invaluable."

The conclusion is irresistible that the bridge in question is a part of the plaintiff's railroad, and as such is assessable only by the state board of equalization; the local assessor was without jurisdiction to assess said bridge and the tax in question is, therefore, void. The conclusion reached makes the examination of other questions argued by counsel unnecessary.

The decree of the court below is right, and it is accordingly

AFFIRMED.