CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL., APPELLEES, V. RICHÁRDSON COUNTY ET AL., APPELLANTS.

FILED OCTOBER 5, 1904. No. 13,045.

1. Case Followed. *Chicago, B. & Q. R. Co. v. Richardson County*, 61 Neb. 519, followed.

2. Act Constitutional. Sections 39 and 40, article I, chapter 77, Compiled Statutes, 1901, are constitutional and valid.

APPEAL from the district court for Richardson county: JOHN S. STULL, JUDGE. *Affirmed.*

*Smyth & Smith* and *John Gagnon,* for appellants.

*Charles F. Manderson, J. W. Deweese, Francis Martin* and *Frank E. Bishop, contra.*

*H. H. Baldrige, C. C. Wright, J. P. Breen* and *W. H. Herdman, amici curiæ.*

POUND, C.

The facts in this case are the same as those involved in *Chicago, B. & Q. R. Co. v. Richardson County,* 61 Neb. 519, except that assessments for different years are in question. A further point is made on behalf of the county, however, not raised in the former case, namely, that sections 39 and 40, article I, chapter 77, Compiled Statutes, 1901, are unconstitutional. This point has been argued with no little ability and ingenuity, on the part of appellants, and is of such importance as to require our careful consideration.

Four objections are made to the plan for assessment of railroad properties prescribed by said sections. The first is that "sections 39 and 40, in legal effect, exempt the franchises of the railroad corporations from taxation and thereby violate section 1, article 9 of the constitution." This contention is disposed of sufficiently, in our opinion, by *State v. Savage,* 65 Neb. 714, in which this court held, construing the sections in question, that "the state board of equalization, in the assessment of railroad and telegraph properties, should include in its assessment the value of the franchise with the tangible property assessed." HOL-COMB, J., delivering the opinion of the court, at page 750, says:

"It seems reasonably clear that in assessing railroad and telegraph property as contemplated by sections 39 and 40, the whole property belonging to any one corporation, and subject to assessment in this state, should be valued for tax purposes in its entirety, and that in such valuation should be included all elements going to make up the entire property, whether consisting of franchises or other intangible property, or physical property, be it real, personal or mixed."

Next, it is asserted, to quote from the brief of counsel, that "the statute, sections 39 and 40 of the revenue law, for the assessment of railroad property provides a different mode of assessment for that property from that which

is provided for the property of the citizen, and is, there-
fore, void, as violating the uniformity required by the con-
stitution." Section 1, article 9 of the constitution, reads, in
part: "The legislature shall provide such revenue as may
be needful, by levying a tax by valuation, so that every
person and corporation shall pay a tax in proportion to
the value of his, her or its property and franchises, the
value to be ascertained in such manner as the legislature
shall direct." Construing this section, the court said in
*State v. Savage, supra*:

"The paramount object of the constitution, and the laws
relative to taxation, as we conceive the rule to be, is to
raise all needful revenues by valuation of the taxable prop-
erty so that each owner of property taxed will contribute
his or its just proportion of the public revenues."

If properties are so essentially distinct in their nature
that to assess each in one particular way would not result
in requiring the respective owners to pay taxes in propor-
tion to the value of their respective properties, it is evident
that an attempt to provide a uniform method of assessment
would involve contravention of the "paramount object"
of the constitution. Hence, it is the result, not the method
employed in reaching it, which must be considered.
Counsel point out that section 52 of said chapter directs
the assessor, when valuing real property generally, to fix
"the value of each tract or lot improved, the value of each
tract or lot not improved, and the total value," while the
state board of equalization, in valuing a railroad, is
directed, as counsel put it, to "lump the whole thing,
whether it be buildings, lots, tracts of land or personal
property, and put a price upon the heap." But the two
species of property are in no wise comparable. What sort
of result should we get if a local assessor, assessing 10
miles of road, was required to value the right of way unim-
proved, the right of way with ties and rails laid upon it,
and the total value? What gives the 10 miles of track
their real value is the franchise of the corporation operat-
ing them, the connections in and out of the state, and the

fact that they are part of a great system of railway, operated as a whole. An attempt to assess the track of a railway in any one county by the statutory method of assessing houses and lots, would produce gross inequality, and enable the most valuable features of railroad properties to escape taxation. It is said that the scheme of dividing the total value by the number of miles in any county is arbitrary. But the real question is whether it provides a reasonable mode of ascertaining the value of that portion of a railroad lying in a given country, so as to insure that the corporation contribute its just proportion of the public revenues. The track in any one county is not an entity. It is merely part of a whole, spreading over many counties, or even many states. The value of each such part is obviously the proportion which it bears to the whole. Viewed by itself, apart from its place in the whole, it is merely a ditch and grade, bearing ties and old iron.

The third objection is that the system provided by the sections in question "exempts railroad property assessed by the state board of equalization from the payment of its proportion of the taxes levied for the support of the county, school district and city, appellants in this action, and thereby violates the rule of uniformity prescribed by section 1, article 9 of the constitution." As the municipality in question is not a city of the metropolitan class nor of the first class, in which different standards of assessment prevail from those employed in the state at large, this case does not involve the question expressly left open by the opinion of HOLCOMB, J., in *State v. Savage, supra.* Here the same assessment serves for county and municipal purposes alike as to all property. Of course the presumption is that both the board of equalization and the local assessors act fairly and impartially, and fix a just and true valuation. *State v. Savage, supra.* Hence the question is whether, assuming that they do so, a proper proportion of the burdens of municipal taxation is thrown upon the railroad companies. This question depends upon

the view taken as to the nature of railroad property. If the railroad is an entity, we have one piece of property, spreading over several counties; if that portion within each county is a separate entity, then a valuation of such separate entity should be made in each county, as in other cases. We do not think this matter admits of debate. Bridges, depots, water tanks, roundhouses, and other necessary structures upon the right of way, are as much parts of the railroad as a whole as a permanent building upon land is annexed to and a part of the land. They have no separate existence apart from the road, but go to make up the one entity called the railroad. So thoroughly is this true, that they will pass by mortgage or conveyance of the road without being named expressly. *Porter v. Pittsburg Bessemer Steel Co.*, 122 U. S. 267, 30 L. ed. 1210; *United States Trust Co. v. Wabash, St. L. & P. R. Co.*, 32 Fed. 480. If, as held in the latter case, a hotel on the right of way of a railroad, operated in connection therewith for the accommodation of its patrons, is a mere appurtenance to the road, covered by conveyance of the road, without express mention, how much more is this true of bridge. depots and the like? But if these are not separate entities, to be dealt with apart from the road as such, it follows that the municipality cannot claim to have within its borders certain specific railroad property, but only a certain proportion of the whole road. This is the view taken by the statute, and we think it well-founded and reasonable. Apart from the road as a whole, the bridge is only so much junk; severed from the road, the depot is of little or no value. Each is made specially to be a part of the whole line, and to treat it as a separate entity is to take away its chief value. If the road as a whole is valued correctly, the several portions in each county cannot fail to be justly valued when assessed at the proportion they bear to the whole. *Adams Express Co. v. Ohio State Auditor*, 165 U. S. 194, 220, and cases cited.

Finally, it is said that the statute makes a classification not authorized by the constitution. In our view the classi-

fication is made, not by the statute, but by the nature of the subjects dealt with. They are intrinsically and fundamentally distinct, and the legislature, which is given the power expressly to fix the mode of assessment as it may direct, has adopted a method which has been in operation many years, has been readopted in the new revenue law, and is reasonably calculated to meet the problem in hand. Any method would doubtless be open to some objection in its practical workings. But if the method chosen may be carried out so as to produce uniformity of taxation in proportion to the value of property, as contemplated by the constitution, it is constitutional and valid.

Two further objections to the statute have been urged by counsel who appear as friends of the court. The first is that it operates unequally and unreasonably with respect to railroad companies whose tracts are situated wholly within one county, such, for example, as terminal and belt line companies. The arguments advanced on this ground, however, apply rather to the constitutionality of provisions in the several st itutes governing municipalities, whereby the valuation of railroad properties for state and county purposes is required to be taken as a basis of assess- ment in such municipalities made on a different basis, than to the constitutionality of the general statutory provisions with reference to state and county assessments. So far as they apply to the sections here in question, we think they are met sufficiently by what has been said already. The other objection is that the statute contravenes the constitutional guaranties that no person shall be deprived of property without due process of law, in that it does not provide for notice to the companies assessed of the meeting of the state board of equalization, and does not provide for notice to other taxpayers of the meeting of such board, in order that they may insist upon proper equalization of their assessments with those of the companies in question. The statute provides a date upon which railroad companies within the purview of the act shall make returns. It provides a place where the meeting

of the state board of equalization shall be held, and provides expressly that such meetings shall take place as soon as practicable after the returns are filed. These provisions must be construed, if possible, in such manner as to make them constitutional and valid. If the statute had said that the meeting should be held immediately upon the return required to be made by the railroad companies, there could be no question that the time and place were stated with sufficient certainty. But it is well settled that "immediately" means "as soon as practicable," and conversely it is proper to construe "as soon as practicable" to mean "immediately." *Huff v. Babbott,* 14 Neb. 150; *Lydick v. Korner,* 13 Neb. 10. So long as the time and place of the meeting of the state board of equalization are thus fixed with such certainty as to enable the companies to know by reference to the statute at what time and at what place their properties will be assessed and valued, we perceive no merit in the objection. The state board of equalization is a public board. Its meetings are public, and as a matter of fact and practice the corporations have always been accorded a hearing before it. Where the statute names the time and place for the meeting of the assessing board, personal notice is not necessary. *Kentucky Railroad-Tax Cases,* 115 U. S. 321; *State Railroad Tax Cases,* 92 U. S. 575, 610; *Pittsburg, C. C. & St. L. R. Co. v. Backus,* 154 U. S. 421. If returns are made as required by the statute, all citizens are advised by the terms of the statute as to the time and place of the meeting of the state board of equalization. If any company fails to make a return, five days are provided for during which the delinquent return may be received. At the expiration of such five days, the auditor, a public officer, is required to obtain the necessary information, and a meeting of the state board of equalization is to be held "as soon as practicable," or in other words, immediately. These provisions of the statute would seem to afford other taxpayers a sufficient opportunity to be heard with reference to the assessment of the companies in question for the

purpose of insuring uniformity and equality in taxation. The practice has always been in accordance with this interpretation of the statute, and we think the sections in question will reasonably bear such construction.

We therefore recommend that the decree be affirmed.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.