## ROBERSON *v.* WEAVER.

1. A warrant to dispossess a tenant failing to pay rent is converted by the tenant's counter-affidavit into mesne process, and the further procedure partakes of the nature of an ordinary suit, in respect to the amendment of the pleadings.
2. It is in the discretion of the court to allow a plea to be amended without the affidavit required by the Civil Code of 1910, § 5640, that the facts contained in the amendment were not omitted for the purpose of delay. The court's discretion was not abused in this instance.
3. The defendant in his plea may admit a prima facie case for the plaintiff; and if this right is asserted before the plaintiff introduces evidence, the burden of proving his defense is upon the defendant, and he is entitled to open and conclude.
4. In a counter-affidavit against a warrant to dispossess him for failure to pay rent, the tenant may recoup such damages as may have been sustained at the time of the service of the dispossessory warrant.
5. The owner of a hotel building leased it for a term of three years, beginning at a specified date. The lease was executed about two months before the term was to begin, and while the hotel was in possession of another tenant whose term was to expire with the beginning of the new lease. In the lease the landlord covenanted, as early as practicable, to enlarge the hotel by the addition of other rooms, to make certain alterations, to do certain repairs to other parts of the hotel in conjunction with the work of the alterations, and on completion of the work to equip the additional rooms with furniture. Upon this being done the lessee was to pay an additional monthly rent. The lessor's covenant bound him to proceed with the work of making the improvements as soon as he had the right of lawful entry, and to prosecute the work to completion with reasonable promptitude. A failure to make the improvements as provided in the lease was a breach of his covenant.
6. If the landlord had breached his covenant by failure to make the additions and improvements at the time he undertook to dispossess his tenant for failure to pay a month's rent in advance according to the tenant's covenant, and the landlord's breach of covenant affected the

value of the lease as an entirety, the tenant could recoup as damages the difference between the value of the lease considered as an entirety and the amount which the tenant contracted to pay.

7. A covenant in the lease bound the landlord to keep all other portions of the hotel in repair and in a reasonable condition, and on his failure after ten days written notice to make necessary repairs the tenant was authorized to do so at the landlord's expense; the landlord was not to be liable for any damages resulting from leaks in the roof, unless he was given written notice of the existence and approximate location of the leaks, and five days were allowed in which to make the repairs. On breach of this covenant by the landlord, where no special damages are claimed by the tenant other than the effect of the breach on the value of the lease, the measure of damages is the diminished value of the lease, due to this breach.

8. Some of the testimony with respect to the leaks in the roof was not sufficiently restricted to the time when the leaks existed with relation to the date of the alleged breach (whether before or after January 1, 1908), nor as included in the tenant's written notice to the landlord, complaining of leaks in the roof.

9. Testimony was allowed as to the value of furnished rooms and rooms with baths, and the number of guests turned away for lack of accommodation, as bearing on the value of the lease for the full term, if the additions had been made by the landlord as he obligated to do. This evidence was incompetent, as the damage claimed was the difference between the rental value of the premises which the tenant contracted to pay and their value had the improvements been made.

10. The testimony of the tenant relating to the promises of the landlord with reference to a prior parol lease was irrelevant.

AUGUST 18, 1916.

Eviction. Before Judge Graham. Laurens superior court. May 19, 1915.

F. H. Roberson was the owner of a hotel which he leased to Mrs. Mattie V. Weaver by written contract, dated August 3, 1907, for the term of three years from October 1, 1907. On August 8, 1907, Mrs. Weaver, under a verbal contract, took possession of the unexpired term of a former lessee, whose term was to expire on October 1, 1907. For the unexpired term of the former lessee she paid in advance $150 per month. Under the written contract the lessee agreed to pay rent at the rate of $200 per month, to be paid monthly in advance on the first day of each month, without grace, during the continuation of this lease. The lease provided for the enlargement of the hotel, and contained a stipulation that upon the completion of the additional rooms and equipping them with furniture the lessee was to pay $325 per month in advance on the first day of each month, without grace. The material parts of

the contract are contained in the following paragraphs: "7. The lessee contracts, as a part of the consideration of this lease, to pay all light and water charges, to replace all broken glass, to keep the hotel roofs clear of litter and trash, and to keep all gutters and drain-pipes open and unobstructed; also to keep all the plumbing in first-class order and repair; all without cost to the lessor. 8. The lessee contracts to keep said hotel open continuously during the life of this lease; to operate it under her personal supervision and direction, in a proper and orderly manner, as a high-class commercial hostelry, at rates of $2.00 per day and upward, under the name and style of the New Dublin. . . 10. The lessor shall keep all other portions of the property in repair and in a reasonable and tenantable condition. Should he fail to make necessary repairs, or to proceed towards doing so within ten days after delivery [of] written notice from the lessee to the lessor or his agents, then in such case the lessee may make such repairs at the expense of the lessor, at the lowest possible cost and to the best advantage. An itemized statement of same, showing material and labor furnished, certified to by the mechanic or contractor doing the work, and properly receipted, may be tendered in part payment of the rent due for the next succeeding month. But the lessor shall not be liable to the lessee for any damage resulting from leaks in the roof, unless written notice of the existence and approximate location of such leaks has been given to the lessor or his agent, and five (5) days time allowed for making needed repairs in the defective roof. 11. It is understood and agreed between the parties that the lessor shall, as early as practicable, enlarge the hotel, by the addition of a third story of [or?] such other plan as he may adopt, thereby increasing the capacity of the hotel to approximately forty-six rooms above the ground floor, not less than eight of which rooms shall be provided with connecting baths; the enlargement of hotel lobby by the removal of front stairway and partition wall between same and lobby, and corresponding enlargement of room No. 17; the enlargement or alteration of the kitchen, serving-room, and storeroom; making necessary alterations in any of the existing rooms, walls, or other parts of the building, in order to carry out the lessor's plans for the work. The contractor, workmen, and others engaged in the prosecution of this or any other work of similar character shall have free and

unobstructed passage in and out of the premises during working hours. 12. The lessor agrees to repair or replace all broken plastering, paint all woodwork in need of paint, kalsomine or whitewash walls in the existing rooms and halls not already papered or in good repair, in conjunction with the other alterations referred to. The work to be proceeded upon with reasonable promptness and completed as soon as practicable. 13. Upon the completion of the additional rooms and their being equipped by the lessor with usual necessary heavy furniture, consisting of bedsteads, springs, mattresses, pillows, dressers, washstands with usual crockery ware, chairs and tables, the lessee agrees to receive said rooms as part and parcel of said hotel, and thereafter to pay, on demand of the lessor, rent for the remainder of the original term of three years at the rate of three hundred and twenty-five ($325.00) monthly in advance, on the 1st day of each month, without grace, in the manner set forth in the paragraph No. 6 above."

On January 1, 1908, the lessee refused to pay the month's rent in advance, and also on demand refused to surrender possession of the premises to the lessor. Thereupon the lessor sued out a warrant to dispossess the lessee for failure to pay rent. The dispossessory warrant was arrested by the filing of a counter-affidavit by the lessee that the amount of rent claimed was not due. By amendment of her counter-affidavit the lessee sought to recoup damages for an alleged violation of the lessor's covenants. The jury returned a general verdict for the defendant. The lessor made a motion for a new trial, which was refused, and he sued out a bill of exceptions.

*Hardeman, Jones, Park & Johnston, W. C. Davis,* and *J. S. Adams,* for plaintiff.

*Hines & Jordan* and *G. H. Williams,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

1. The progress of the dispossessory warrant was arrested by the filing of a counter-affidavit that the rent claimed was not due. A warrant to dispossess a tenant is converted by the filing of a counter-affidavit into mesne process, and the further procedure partakes of the nature of an ordinary suit, in respect to the amendment of the pleadings. Civil Code of 1910, § 5706; *Mitchell* v. *Masury,* 132 *Ga.* 360 (64 S. E. 275).

2. The statute provides that a defendant can not set up in

an action any new fact, or defense, of which notice was not given by the original plea, unless he shall attach to the amendment an affidavit that he did not omit such new facts or defense for the purpose of delay, and that the amendment is not now offered for delay, or unless in the discretion of the court the circumstances of the case or substantial justice between.the parties require that the amendment be allowed without attaching such affidavit. Civil Code of 1910, § 5640. The court allowed the counter-affidavit to be amended without the affidavit referred to in the cited section. The amendments contain pleas of recoupment. It appears that on the filing of the counter-affidavit the tenant instituted an equitable action against the landlord, alleging that by reason of his violation of the obligation imposed on him by the contract he had endamaged the tenant in a sum exceeding the amount due for rent, a failure to pay which furnished the ground upon which the dispossessory warrant was issued; and praying judgment for such excess. She alleged that on the trial of the dispossessory proceedings she could not obtain judgment for such excess. The tenant's equitable petition was dismissed, and the judgment of dismissal was affirmed by this court. *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662). The writer dissented from that judgment, and still adheres to the views expressed in his dissent. But the judgment pronounced in that case is binding upon the parties. The amendments in the main undertook to set up matters of recoupment, which the tenant unsuccessfully had attempted to do in her equitable petition. Under these circumstances we do not think that the court abused his discretion in allowing the amendments filed without an affidavit that the defense therein set up was not filed for the purpose of delay.

3. Over objection the defendant was allowed to amend her counter-affidavit by alleging that she admitted that on August 3, 1907, she rented from the plaintiff the premises set out and described in his affidavit to evict her; that she contracted to pay $200 per month in advance on the first day of each month, without grace, and that she failed to pay rent when the same became due on January 1, 1908; that she refused to pay the installment of rent for January, 1908, on demand, and that she refused, when so demanded, to deliver the possession of the premises, as set out in the affidavit to evict her; that the rent is still unpaid, and would

be due but for the counterclaim against the plaintiff for his failure to make the additions and repairs to the premises under the contract, as is more fully set out in her amendment to the original counter-affidavit; and that she held possession under the contract until January 1, 1909. The objection to the allowance of this amendment was that its only purpose was to shift the burden of proof, so as to give the defendant the right to open and conclude. In his motion for new trial the plaintiff complained that the court erred in allowing the defendant to open and conclude. A defendant, in order to have the right to open and conclude, must in his plea admit enough to make out a prima facie case for the plaintiff, and the admission must be made and the right to open and conclude asserted before the plaintiff submits any evidence. *Central of Georgia Railway Co.* v. *Morgan,* 110 *Ga.* 168 (35 S. E. 345). In the amendment filed the defendant admitted the tenancy and her covenant to pay rent, that the landlord had demanded possession of the premises, that she had refused on demand to surrender the possession, and that she was due the rent unless she was entitled to recoup the damages which she set up in her counter-affidavit. Upon these admissions the plaintiff would have been entitled to a judgment unless the defendant proved her counterclaim. The defendant had a right to make these admissions in writing before the case was opened for the introduction of evidence, for the purpose of asserting her right to open and conclude. We think that the amendment was properly allowed, and there was no error in awarding the defendant the opening and conclusion.

4. The landlord had not begun the enlargement of the hotel on January 1, 1908. The tenant refused to pay in advance, as stipulated in the lease, the rent for the month of January. In the amendments to her counter-affidavit she defended her refusal to pay the rent for that month on the ground that she had suffered damages in a sum greater than the rent, on account of the landlord's violation of his covenants in the lease. She alleged that he refused to enlarge the hotel and its equipment as provided in paragraphs 11 and 13; that if he had made the additions stipulated in paragraph 11, the value of the term for which she had leased the hotel was $200 per month in excess of the rent contracted to be paid. She further alleged that the landlord's failure to make the repairs specified in paragraph 10 had reduced the value

of the premises $50 per month from the date of the lease. She further averred a failure of the landlord to comply with his covenants as expressed in paragraph 12, but laid no damages for the alleged violation separate from that involved in paragraph 11. Judgment was also prayed for excess of damages over the rent. The main issue to be determined by the jury was whether the tenant had sustained any damage at the time of the suing out of the dispossessory warrant, and, if so, what was the extent of it. The tenant can only recoup against the landlord in this action damages which had been sustained when the dispossessory warrant was issued. *Weaver* v. *Roberson,* supra.

5. In determining whether there has been a violation of the covenant to enlarge and equip the hotel, as provided in paragraphs 11 and 13, it becomes necessary to gather from the contract the intention of the parties as to the time when the work of enlargement should begin. The lessor covenants that he "shall, as early as practicable," do this work. The subject-matter of the lease was a hotel; the term of the lease was three years. The additions were not only to be enlargement of the capacity to entertain guests, but to change the office arrangements, and otherwise add to the attractiveness of the hostelry as a business proposition. The tenant was contracting for enlarged facilities for doing a hotel business, and the landlord recognized that purpose, and promised to supply them as soon as practicable. That did not mean that the landlord was relieved of making the improvements if he was unable to raise the money with which to pay for them. The contract does not suggest that the landlord was to act on his own convenience in starting the work contracted to be performed. When the lease was executed the hotel was in the occupancy of another tenant, whose term would not expire until October 1, 1907, the time when the lease to Mrs. Weaver was to go into effect. It is very probable that this condition influenced the parties to some extent in using the words, "as early as practicable," as excusing any delay in beginning the work while the premises were in the lawful occupancy of another. It is a reasonable deduction that, as the hotel was to bring a largely increased rent attributable to the stipulated improvements, and the tenant was contracting for enlarged facilities for conducting a hotel, both parties contemplated that the work should be commenced speedily after the landlord was at liberty to

lawfully enter the premises so as to make the improvements contracted for. The words, "as soon as practicable," as used in a contract requiring that it should be performed as soon as practicable, are practically synonymous with 'speedily.' Duncan *v.* Topham, 8 Man. Gr. & S. 225, s. c. 65 E. C. L. R. 225. In the case of Chicago &c. R. Co. *v.* Richardson County, 72 Neb. 482 (100 N. W. 950), it was said: "It is well settled that 'immediately' means 'as soon as practicable,' and conversely it is proper to construe 'as soon as practicable' to mean 'immediately'." In Fidelity & Guaranty Co. *v.* Western Bank, 29 Ky. L. R. 639 (94 S. W. 3, 5), it was held that "the phrases, 'immediate notice,' 'notice forthwith,' 'as soon as possible,' 'as soon as practicable,' used in policies of guaranty insurance providing that notices of loss shall be given to the insurer by the insured within a certain designated time, have practically the same meaning, to wit, that the insured shall, with all promptitude, considering the probable amount of the loss, and the probability of the 'risks' endeavoring to escape, give notice to the insurer of the occurrence of the loss." In the construction of contracts, the court will endeavor to determine what was the real intention of the parties, and will look to the language employed, the subject-matter and circumstances, and may avail itself of the same light which the parties enjoyed when the contract was executed. *Cloud* v. *County of Taliaferro,* 138 *Ga.* 214, 215 (74 S. E. 1074). The 12th paragraph of the lease refers to the lessor's obligation to repair broken plastering, the painting of woodwork, and the whitewashing of walls of existing rooms, "in conjunction with the other alterations referred to. The work to be proceeded upon with reasonable promptness and completed as soon as practicable." The 13th paragraph refers to the furnishings of the additional rooms upon their completion. We think the intention of the parties, as reflected in the contract, was that the landlord should proceed with the work of making the improvements as soon as he had the right of lawful entry, and to prosecute the work to completion with reasonable promptitude.

The landlord, a few days after making the lease to the defendant, procured from the tenant in possession a surrender of his term, and on August 8, 1907, verbally leased the premises to the defendant, to the time when her written lease became effective, and gave her possession of the premises. Testimony was introduced that the

contemplated additions and improvements would require from six to seven months for their completion. Taking into consideration these facts, the duration of the tenancy, and the subject-matter of the lease, it was for the jury to say whether the failure of the landlord to begin work by January 1, 1908, amounted to a breach of the lease. If the landlord failed to make improvements within the time provided in the lease, such failure would be a breach of the covenant to make the stipulated improvements.

6. The usual rule to measure damages for breach of contract to make specific repairs or improvements is the same as in the case of a contract to keep in repair; which ordinarily is the difference between the rental value of the premises with and without the repairs or improvements. 1 Tiffany on Land. & Ten. § 87 (10). In some cases it is proper to allow the tenant to recoup special damages solely traceable to the breach of the contract. *Stewart* v. *Lanier House Co.,* 75 *Ga.* 582. The claim of the defendant for certain special damages was stricken on demurrer, and the damage sought to be recouped in the counter-affidavit was the difference between the value of the lease, had the landlord complied with his contract, and the amount which the defendant contracted to pay. If the landlord breached his covenants by failure to make the additions and improvements by January 1, 1908, and such failure affected the value of the lease as an entirety, the damages would be measured by the difference between the value of the lease, considered as an entirety, had the landlord complied with his contract, and the amount which the defendant contracted to pay.

7. The lessor covenanted, in the 10th paragraph of the lease, to keep all other portions of the hotel in repair and in a reasonable and tenantable condition; and on his failure after ten days written notice to make the necessary repairs, the lessee was authorized to do so at the expense of the lessor. The lessor was not to be liable for any damage resulting from leaks in the roof, unless written notice had been given of the existence and approximate location of the leaks, and five days were allowed in which to make the repairs in the roof. The jury were instructed that a breach of the landlord's covenant to repair gave to the tenant an abatement of the rent to the extent of the loss that resulted from the landlord's violation of his covenant. Ordinarily the remedy of a tenant for failure of the landlord to repair according to his covenant is to

make the repairs himself and look to the landlord for reimbursement, or to occupy the premises without repair and hold the landlord responsible for damages by action or by recoupment to an action for rent. *Lewis* v. *Chisholm,* 68 *Ga.* 40. The damages sought to be recouped were the diminished value of the lease, due to the landlord's failure to perform this covenant; and the court's instruction was in substantial accord with the rule of law in this regard.

8. The rulings made in the 8th, 9th, and 10th headnotes do not require elaboration.

*Judgment reversed. All the Justices concur.*